FILED

Louis Roman
631 Fairview Ave.
Bridgeport, CT 06606
Fax: 203-290-5042
L.roman007@outlook.com

2016 DEC -5 PM 3: 42

December 5, 2016

US DISTRICT COURT
BRIDGEPORT CT

# UNITED STATES DISTRICT COURT

3:16 cv 1988 (JCH)

# FOR THE DISTRICT OF CONNECTICUT

# BRIDGEPORT DIVISION

# <u>AUDITA QUERELA</u>

COMPLAINT OF THE PLAINTIFF PURSUANT TO 11. U.S.C. SECTION 506(A) AND BANKRUPTCY RULE 3012

TO DETERMINE THE VALUE OF SECURITY AND CREDITORS ALLOWED SECURED CLAIM AND COMPLAINT

FOR DECLARATORY JUDGMENT, DAMAGES, SANCTIONS, INJUNCTIVE RELIEF.

PLAINTIFF(S):

LOUIS ROMAN, LEAD PLAINTIFF OF 50 OR MORE PRO SE PARTIES INCLUSIVE OF THE FOLLOWING:

HEATHER LINDSAY, SALLY VOLLENWEIDER, ERIC VOLLENWEIDER, ADAM KRUMWIEDE, JOAN KLOTH-ZANARD,  MICHAEL PORZIO, DIANE L. ROMAN, WAYNE CLARK, LENORA BROWNFIELD,MARK DIVICO, JOAN KLOTH-ZANARD, DIANE HART,RICHARD HOLT, KAT SORRENTINO, FERDINANDO PORZIO, L. MICHAEL PORZIO, STACY LINDSEY, RITA RAUS,  MARTIN GOETHCH THCHE, TINA GOETHCHE, LUDES NINO, PAUL SILADI,

VS.

RICHARD  M.  LEIBERT, BRUCE FAIR, BEN STASKIEWICZ, ANDREW BARSOM, GEOFFREY K.MILNE, RICHARD JACOBSON, BRIAN D. RICH, DAVID ROSENBERG, MICHELE SENSALE, HON. PATRICK L. CARROLL III, HON. CHASE T. ROGERS, HON.BARBARA N. BELLIS, HON. EARL C. RICHARDS III, HON.THEODORE R. TYMA, HON. JOHN F. BLAWIE, HON. MICHAEL HARTMERE, HON. ALFRED J. JENNINGS JR., HON. HOWARD T. OWENS, JR., HON. RICHARD GILARDI, CONNECTICUT SENATOR GARY A.HOLDER-WINFIELD, CHAIRMAN OF THE CONNECTICUT LEGISLATURE BANKING COMMITTEE, ROBERT WILOCK CHIEF FORECLOSURE CLERK BRIDGEPORT SUPPERIOR COURT, UNDER 18 USC 4 MISPRISION OF A FELONY 18 USC 73 OBSTRUCTION OF JUSTICE AND 18 USC 241 AND 242 CONSPIRACY AGAINST RIGHTS AND UNDER COLOR OF LAW.

DEFENDANT(S)

Case No.: 3:16 cv 1988 (JCH)

Complaint for Fraud against BNY Western Trust, The Bank of New York Mellon F/K/A the Bank of New York as Trustee Residential Asset Securitization Trust 1999-A3 Mortgage Pass-Through Certificates, Series 1999-C, INDYMAC Mortgage Bank and their attorneys and Connecticut Superior Judges listed as Defendants and the Chairman of the Connecticut State Legislature Banking Committee, Hon. State Senator Gary A. Holder-Winfield herewith.

## PARTIES

Please note that the number of Plaintiff is expected to exceed 50 to 100 members
of our Pro Se Group but for purposes of expediency we are moving forward with the
Plaintiffs stated herein with the right to add additional Plaintiffs with the Court's
approval and at the Court's discretion.

All Plaintiffs in this matter have similar or identical issues relative to being victimized by
the banks and their attorneys in their presentation of Fraudulent documents, the deliberate
withholding of information and facts that would support the homeowners claims of
Fraud.

### Plaintiff group's claims of violations inclusive of the following federal rules:

Federal Statutory Right of Redemption, Fair Debt Collections Practices Act, Refusal of
Certified Payment in full, False Evidence, Misleading Legal Argument, Fraudulent
Affidavit, Fraudulent Notary, ROBO Signor, Numerous Frauds against the court that can
be proven, Chapter 7 violations of the Permanent Injunction against collection "a
Discharged Debt", Ignored the existence of a Federal Tax Lien that prohibits a Strict
Foreclosure while a Federal Tax Lien exist, Compulsive Federal Mediation Denied to over
80% of the Plaintiff's Group.

### Relief sought:

In the matter of Primary Plaintiff Louis Roman, the Relief sought is the Voiding of the
Lien claimed by the Defendants. This Lien is unlawful and can be proven to be without
basis. Pursuant to Title 18, U.S.C 4, Misprisions of a Felony, the State Courts have
ignored the evidence and are in violation of this rule.

In the matter of the rest of the Plaintiff's (24), their Right of Redemption via Mediation
and Modification have also being denied along with the fraud committed against them by
the Defendants.

There is clear cut evidence in this matter and all of the Plaintiff's cases of **OBSTRUCTION OF JUSTICE AND SUPPRESSION OF EVIDENCE** in the lower Courts in violation of the U.S. CONSTITION 14TH AMENMENT DUE PROCESS VIOLATIONS, FALSE CLAIMS ACT VIOLATION, FEDERAL STOLEN PROPERTIES ACT VIOLATIONS, TITLE 18 RULE 471-478 "COUNTERFIEDING OF FINANCIAL INSTRUMENTS",

**FACTS:**

1.  On July 12, 2016, Plaintiff, Louis Anthony Roman, residing at 631 Fairview Ave.,

2.  Bridgeport 06606 filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code in this Court: Bankruptcy Case No. 16-50924.

3.  During the course of the Bankruptcy the attorney for the Bank of New York without filing a Proof of Claim entered into the court numerous new parties that had never been involved in the State Court Foreclosure case. In addition he committed a Fraud Against the Court by entering as evidence an Assignment that was not the only Assignment as there were two that followed effectively leaving the Discharged Note and Mortgage (2004 Chapter 7 Discharge) in the possession of the original Mortgage Banker, Northeast Mortgage who is no longer in business.

    This company (Northeast Mortgage Banker) was closed by the State of Connecticut Banking Commissioner for committing 200 counts of Mortgage Fraud. As the last entity to have an assignment in this case the claims and representations made by the attorneys for the Bank of New York Mellon stating that they had a note and mortgage were a fraud. In fact their claims were without basis as they have never had standing and were never required to provide a valid chain of title.

4.  Molly Whiton Esq. was duly appointed as Chapter 13 trustee of the Debtors

bankruptcy estate, and she continues to serve in that capacity.

5.  Defendant, the Bank of New York Trustee and its subsidiary, BNY Western Trust have committed a fraud by claiming that they were the holder of the Unsecured Nonpriority Claims.

## INTRODUCTION

a.      This is an action for declaratory judgment, actual and punitive damages, injunctive relief filed by the Plaintiff/debtor LOUIS A. ROMAN (hereafter "Plaintiff") to determine the true owner of the Plaintiff's debt now Discharged and to determine the interest of the Defendants in the residential real estate property of the Plaintiff and to determine the amount of the allowed secured claim, if any, of the Defendants. The Plaintiff also seeks a declaratory judgment in regards to the claims against the Plaintiff's real estate property.

b.      The Plaintiff seeks declaratory judgment as to the precise nature and extent of any lien and debt held by either of the Defendants.

1.1   The original lender has not made any claims against the real estate property of the Plaintiff while several other Defendants have clouded the title of the Plaintiff by filing fraudulent papers with the Superior Court and the Bankruptcy Court and the Town where the property is situated.

1.2   The Plaintiff in this case is a Debtor under Chapter 13 of Title 11 of the United States Code in case number 16-50924 which case was filed on July 12, 2016 and is presently pending before this Court.

1.3   INDYMAC BANK, is a financial institution who claimed to be the original lender for the Note and Mortgage taken by the Plaintiff's wife in November 24, 1998.

4

## COMPLAINT

### A. JURISDICTION

3.1 Jurisdiction is conferred on this Court pursuant to the provisions of Section 1334 of Title 28 of the United States Code in that this proceeding arises in and is related to the above-captioned Chapter 7 case under Title 11 and concerns property of the Debtor in that case.

3.2 This Court has both personal and subject matter jurisdiction to hear this case pursuant ant to Section 1334 of Title 28 of the United States Code, Section 157(b)(2) Title 28 of the United States Code.

3.3 This Court has supplemental jurisdiction to hear all state law claims, if any, pursuant to Section 1367 of Title 28 of the United States Code.

3.4 The Plaintiff is informed and believes that this matter is primarily a core proceeding and therefore the District Court has jurisdiction to enter a final order. However,   in the event this case is determined to be a non-core proceeding, then and in that event the Plaintiff consents to the entry of a final order by the presiding United States District Court Judge.

### B. VENUE

3.5     Venue lies in this District pursuant to Section 1408(1) of Title 28 of the United States Code.

3.6                              **FACTS:**

**REFUSAL OF PAYMENT BY THE PLAINTIFF**:

Payment in full was offered by the Defendant(s) in 2006 while in a Chapter 13 Bankruptcy in the form of Certified Funds to their Bankruptcy attorney and refused by the Plaintiff and again in 2008 and also refused. "The equity of redemption gives the mortgagor the right to redeem the legal title previously conveyed by performing whatever conditions are specified in the mortgage, the most important of which is usually the payment of money.", *New Milford Savings Bank* v *Jajer, 44 Conn.* App. 588, 593, 691 A.2d 598, 601 (1997).

a. The Plaintiff dishonored their claim by refusing the payment in full that was offered in certified funds.

b. The Plaintiff abandoned their right to claim payment and this is prima facie evidence that there is no debt.

2. Again in 2008, the Defendant's employer and legal owner of the Winning Bid did deliver a Cashier's check for a total amount of the Winning Bid ($200,000.00) to the Committee in satisfaction of the Winning Bid.  It was rejected by the Plaintiff's legal counsel Hunt Leibert & Jacobson.

3. **RES JUDICATA** of the Promissory Note **due to a 2004 Chapter 7 Discharge of the Note that is subject to the Federal Bankruptcy Chapter 7 Permanent Injunction against collection of the debt**. The Federal Courts have decided that there is no debt. This Discharge caused a Release of the Debt and, along with a fraudulent Assignment, fraudulent Affidavit and a bogus Notary of the Plaintiff's Documents, renders this foreclosure action as unlawful,

abusive and moot.  The federal courts have traditionally adhered to the related doctrines of res judicata, a final judgment on the merits of an action [claim preclusion] and collateral estoppel [issue preclusion]. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were issues that were or could have been raised in that action.

4. **Collateral Estoppel.**  Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case. "Our Supreme Court…stated, in the context of an equitable estoppel claim, that [t]here are two essential elements to an estoppel; the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other.  In the absence of prejudice, estoppel does not exist.' (internal quotation marks omitted.) *SKW Real Estate Ltd. Partnership* v *Mitsubishi Motor Sales of America, Inc*. 56 Conn. App. 1, 8, 741 A.2d 4 (1999), cert denied, 252 Conn. 931, 746 A.2d 793 (2000); see also 2 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) & (Conn. Sup. 2001) pp. 385-86. The Plaintiff at all times avoided informing the Court and the Defendant(s) that they were aware of the Chapter 7 Discharge and instead changed their strategy and elected to take the Defendant(s) home by claiming before the Hon. Judge Blawy that they had an agreement and consent from the Winning Bidder to purchase the Winning Bid, inclusive of the right to take title to the Defendant(s) home in lieu of the normal foreclosure procedures in

Connecticut. This was a direct violation of Collateral Estoppel, the charges of which are clearly supported by Court Transcripts. Furthermore, the Plaintiff has failed to state a claim upon which relief can be granted because of the Discharge of the Note.

5. **FRAUD:**

a. The Plaintiff had full knowledge of the uncollectable nature of the Note as a result of the

   Chapter 7 Discharge but failed to inform the court or the Defendants and continued to try to

   collect the debt. The Defendants were not aware of the Discharged Debt until 2010 while

   reviewing their Bankruptcy Court records. All elements of fraud are represented in the

actions of the Plaintiff. (1) a false statement of a material fact, (2) knowledge on the part of

the defendant that the statement is untrue,  (3) intent on the part of the defendant to deceive

the alleged victim,(4) justifiable reliance by the alleged victim on the statement, and  (5)

injury to the alleged victim as a result. **(Connecticut Appellate Court case: "*Franklin Credit Management Corporation* v. *Thomas J. Nicholas Et Al*", (AC 22186) released December 3, 2002. "*Wells Fargo Home Mortgage* v *Daniel L Koch*", Chapter 13 Bankruptcy Case No. BK 11-40529-TJM, order entered May 30, 2012 U.S. Bankruptcy Court District of Nebraska**.

b. The Plaintiff at all times during this foreclosure case was aware that a **ROBO SIGNOR** was  used in the signing of the Assignment, Affidavit along with a fraudulent Notary whose **Notary License was REVOKED** eight (8) months prior to signing as a Notary for the Mortgage Servicer Washington Mutual.

c. The alleged Assistant Vice President of Washington Mutual who signed the Assignment of the Note and Mortgage to the Bank of New York also signed as an Assistant Vice President of INMC Mortgage Holdings at the same time. Upon speaking with the head of Human Resources for INMC Mortgage Holdings, it was disclosed that the person who signed the Assignment of the Note and Mortgage to the Bank of New York **was never employed by INMC Mortgage Holdings in any capacity. She provided the Defendant's counsel with an Affidavit to that effect.**

d. Furthermore, a Senior Vice President of INDYMAC MORTGAGE BANK, AKA (INMC Mortgage Holdings) in charge of Syndications reviewed all of their internal records and provided the Defendant(s) with an Affidavit clearly stating that **INMC Mortgage Holdings had never sold the Defendant's Mortgage to the Bank of New York.** No record existed in their files to support the Plaintiff's claims, in effect proving that the Plaintiff had committed fraud against the Court and the Defendant.

6. **UNCLEAN HANDS**: The Plaintiff at all times was aware of the fraud to both the Court and the Defendant(s) and has continued with this illegal foreclosure action causing great financial expense and emotional pain to the Defendants by their blatant disregard for the law and legal ethics. The continuation of this action was maliciously intended to punish the Defendant(s) for their persistence in defending their home. "The doctrine of unclean hands expresses the principle that where a Plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue…Unless

9

the Plaintiff's conduct if of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply.' (Intern quotation marks omitted.) *Thompson* v *Orcutt,* 257 Conn. 301, 310, 777 A.2d 670 (2001). This case and the supporting evidence makes it clear that the Plaintiff is without Clean Hands and in fact committed Fraud against the Court and the Defendant(s).

2. The alleged mortgage is void and unenforceable and Plaintiff's claim is barred because the mortgage was procured by fraud and/or any alleged loss to the Plaintiff is caused by the fraud of the Plaintiff and / or the fraud of third parties over which the Defendants had no control.

1.   The Plaintiff's claim is barred because any alleged loss to the Plaintiff is caused by its own negligence, or the negligence of third parties over which the Defendants had no control.

2.   The Plaintiff's claim is barred because of the doctrine of unclean hands.

3. The Plaintiff's claim is barred because of the its failure to add indispensable parties.

4. The Plaintiff's claim is barred because the Plaintiff lacks standing and/or is not a real party in interest.

4.   The Plaintiff's claim is barred because of the Entire Controversy Doctrine.

6. Defendants contest the amount Plaintiff claims is due for any or all of the following reasons:

a. Interest was not calculated in the manner prescribed by the note;

b. The amount claimed due does not account for payments made by Defendants;

10

c. The amount claimed due includes unreasonable and excessive fees not permitted by the note and/or not actually incurred by the Plaintiff.

## RESCISSION FOR VIOLATIONS OF THE TRUTH IN LENDING AND HOME EQUITY PROTECTION ACTS.

7. At all times relevant hereto, Plaintiff or Plaintiff's alleged assignor was a creditor under the Federal Truth in Lending Act, 15 U.S.C.A § 1601 et seq. ("TILA") that was required to provide notices of the right to rescind the mortgage and deliver material disclosures to Defendants .

8. The subject matter of this Complaint is predominantly associated with the Truth in Lending Act, 15 U.S.C. section 1601 (TILA), and to enforce Defendants rights to rescind a consumer credit transaction, to void Plaintiff's alleged security interest in Defendants home, and to recover statutory damages, actual damages and reasonable fees and costs of this action by reason of Plaintiff's violations of TILA and its implementing regulations at 12 C.F.R. Part 226 (Regulation Z), as set forth more fully herein. Furthermore, no "holder in due course" of the alleged mortgage note can be established or verified as of the date of this complaint; a chain of title must be furnished.

a. The Truth in Lending Act of 1968 is designed to protect consumers in credit transactions, by requiring clear disclosure of key terms of the lending arrangement and all costs, and disclosure of certain statutory rights of consumers. The regulations implementing the statute, which are known as "Regulation Z", are codified at 12 CFR Part 226. Most of the specific requirements imposed under the Act are found in Regulation Z, so a reference to the requirements of the Act are usually referred to the requirements contained in Regulation Z, as well as the Act itself.

11

b.   Subpart E and Regulation Z section 32 contain special rules for mortgage transactions. Section 226.32 requires certain disclosures and provides limitations for loans that have rates and fees above specified amounts.

c.   9. Under the Act, Mortgagee's must disclose to Mortgagors the annual percentage rate ("APR"). The APR reflects the cost of the credit to the consumer. Plaintiff failed to accurately disclose to Defendants the APR. Under the Act, Plaintiff must disclose origination fees and discount points. Additionally, the term "finance charge" is defined as all fees paid either directly or indirectly by the Defendants, incident to the extension of the loans. Yet, Plaintiff never disclosed any of the fees paid directly or indirectly to others in connection with the loan.

10. Plaintiff also failed to provide disclosures of Defendants rights and more particularly the right to rescind the loan transaction. Indeed, Plaintiff failed to provide Defendants with two copies of the cancellation notice.

11. The failure of Plaintiff to make the disclosures of the effect of the interest rate, the actual cost of the loan with such adjustments included, the imposition of the undisclosed points and fees in excess of that allowed by Regulation, and failure to disclose Plaintiff's rights including the right to cancel the loan and provide two copies of the form to exercise said right constitute violations of the Truth In Lending Act, Home Equity Protection Act, and implementing Regulation Z.

12. Based upon the violations of the Truth in Lending Act, implementing Regulation Z, and Home Equity Protection Act, Defendants are entitled to actual damages in an amount to be determined at trial.

13. Based upon the violations of the Truth in Lending Act implementing Regulation Z, and Home Equity Protection Act, Defendants are entitled to rescind the loan transaction.

14. Based upon the violations of the Truth in Lending Act, implementing Regulation Z, and Home Equity Protect Act, Defendants are entitled to reasonable attorney fees and costs incurred herein.

<u>COUNT I (LIBEL OF TITLE AS TO ALL DEFENDANTS)</u>

1. Paragraph 1 through 41 of the factual allegations are hereby incorporated and made paragraph 1 through 42 of this paragraph.

2. The defendants made statements regarding the Plaintiff's land that were false and malicious.

3. The statements made by the Defendants were made in the public land record and the judicial branch website which accessible to the public.

4. The statements made by the Defendants were disparaging to the Plaintiff's land.

5. The statements made by the Defendants created a cloud on the title of the Plaintiff's land to the point where the Plaintiff was unable to sell her property.

6. The plaintiff was unable to list her property because the property was deemed not marketable since it was in foreclosure.

7. The defendants filed a "lis pendens" about and concerning the Plaintiff's land which contains false information on the land record.

8. The defendants filed the lis pendens on the land record and other information in the judicial branch system when they knew or should have known that the information was false.

9. The defendants had reckless disregard as to whether the information was false.

10. As a direct and proximate result of the Defendant's statements, the Plaintiff lost money in the forms of but not limited to depreciation in value, loss of lease opportunity, loss of income.

**WHEREFORE,** Plaintiff requests this Honorable Court to grant relief in the following ways:

1. Declaratory judgment

2. Money damages

3. Attorney's fees

4. Costs of litigation; and

5. Such other relief as the Court deems fair, just and equitable.

<u>COUNT II</u>

<u>(DECLARATORY JUDGMENT OF THE VALIDITY OF</u>

<u>THE MORTGAGE LIEN AS  ALL PLAINTIFFS</u>

11. Paragraph 1 through 51 of the first count are hereby incorporated into this count and made paragraph 1 through 52 of this count.

12. Each of the defendants is making claims against the plaintiff's property.

13. None of the defendants has a valid lien on the Plaintiff's property.

**WHEREFORE,** Plaintiff requests this Honorable Court to grant relief in the following ways:

6. Declaratory judgment

7. Money damages

8. Attorney's fees

14

9.  Costs of litigation; and

10. Such other relief as the Court deems fair, just and equitable.

## COUNT III

### (ABUSE OF PROCESS AS TO ALL PLAINTIFFS)

14. Paragraph 1 through 54 of the first count are hereby incorporated into this count and made paragraph 1 through 54 of this count.

15. The defendants used the legal process for a purpose for which it was intended.

16. The defendants used the legal process to harass the Plaintiff.

17. The defendants used the legal process to cause emotional distress up the Plaintiff.

18. The defendants used the legal process to bully the Plaintiff and cause her to abandon her property so that the defendants can convert it.

19. The defendants knew they were abusing the legal process.

**WHEREFORE**, Plaintiff requests this Honorable Court to grant relief in the following ways:

11. Declaratory judgment

12. Money damages

13. Attorney's fees

14. Costs of litigation; and

Such other relief as the Court deems fair, just and equitable

15

**HEREFORE**, Plaintiff moves this Honorable Court to issue relief by; official capacity and individual capacity and prays for the following relief:

15. Declaratory judgment

16. Money damages

17. Attorney's fees

18. Costs of litigation; and

19. Such other relief as the Court deems fair, just and equitable.

**JURY DEMAND**

The Plaintiff demands a jury trial on all issues so triable.

THE PLAINTIFF(S)

By

Louis Roman Pro Se
631 Fairview Ave., Bridgeport, CT 06604
407-615-0286  Phone
lroman007@outlook.com

## Certification

I, Louis Roman, Petitioner, hereby certify that a copy of this Audita Querela Complaint was dully served by U.S. Mail first class postage prepaid, fax and or email pursuant to Rules 2002, 90113 and 9014 of the Federal Rules of Bankruptcy Procedure on December 5, 2016 to the following parties.

| IRS New England Advisory Group 380 Westminster St Providence, RI 02903 | Ben Staskiewicz Esq. Hunt Leibert & Jacobson 50 Weston Street Hartford, CT 06120 | Brian D. Rich Esq One Goodwin Square 225 Asylum Street Hartford, CT 06103 |
|---|---|---|

Att: John Carroll

| J.P. Morgan Chase Mail Code LA4-5555 700 Kansas Lane Monroe, LA 71203 | Bank of New York Mellon 225 Liberty Street New York, N.Y. 10286 | IRS Centralized Insolvency Operations          . P.O. Box 7346 Philadelphia, PA 19101-7346 |
|---|---|---|

Louis Roman , Pro Se

December 5, 2016

*Exhibit A*

June 22, 2016

Mr. Dennis O'Connor
Executive Director
Connecticut Judiciary Review Council
505 Hudson Street, 1st Floor
P.O. Box 260099
Hartford, CT 06106

Re: Formal Complaint against the Hon. Barbara Bellis, Presiding Judge of the Fairfield
Judicial District.

Dear Mr. O'Connor,

Attached hereto please find our formal complaint against Judge Barbra Bellis in the
foreclosure matter known as BNY Western Trust v. Diane L. Roman, Docket number
CV 00-0378565, the longest ongoing foreclosure case in the history of the State of
Connecticut Judicial System. We have been fighting for our home for sixteen (16) years
against the BNY Western Trust, the substitute Plaintiff for the Bank of New York Trustee as the
Plaintiff.

<u>**The Connecticut Practice Book, Code Of Judicial Conduct**</u> states that under Canon
3, "A Judge Should Perform the Duties of Judicial Office Impartially and Diligently".
Canon 3 section (3) and (4) and COMMENTARY: The duty to hear all proceedings fairly
and with patience is not inconsistent with the duty to dispose promptly of the business of
the court. Courts can be efficient and businesslike while being patient and deliberate.
Canon 3 section (4) A judge should accord to every person who is legally interested in a
proceeding, or that person's lawyer, full right to be heard according to law.
*A judge should disqualify himself or herself in a proceeding in which the judge's
impartiality might reasonably be questioned, including but not limited to
instances where; I have filed Motions to Disqualify Judge Bellis for her bias and
she has refused to recused herself.*

(A)  the judge has a personal bias or prejudice concerning a party, or personal
knowledge of disputed evidentiary facts concerning the proceedings:
(B)An Answer was entered in the court by Louis Roman pursuant to **Connecticut State
Statute 52-121** wherein a Defendant who has never filed an Answer in a Civil Case or
has never been Defaulted nor has there ever been a judgment against him can file his
or her Answer at any time during the Civil proceedings. *(Judge Bellis has ignored my
Answers, Denials, Special Defenses and Counterclaims in violation of this state
law.*

1

**Other Canons violated by Judge Bellis include:**

Canon 1. A Judge Shall Uphold and Promote, the Independence, Integrity, and Impartiality of the Judiciary, **and shall avoid impropriety and the Appearance of impropriety.**

Rule 1.1. Compliance with the Law, A judge shall comply with the law.

An Answer was entered in the court by Louis Roman pursuant to **Connecticut State Statute 52-121** wherein a Defendant who has never filed an Answer in a Civil Case or has never been Defaulted nor has there ever been a judgment against him can file his or her Answer at any time during the Civil proceedings. **(Judge Bellis has ignored my Answers, Denials, Special Defenses and Counterclaims in violation of this state law.**

COMMENT: This rule deals with the judge's personal conduct.

A judge's professional conduct in enforcing the law is covered by Rule2 .2.When applying and interpreting the law, a judge sometimes may make good faith errors of fact or law. Errors of this kind do not violate this Rule. **This is not an error but we are being judged by a "Different Standard".**

As a matter of record we hereby submit evidence in the form of two transcripts for the Committee's review in support of our charges. We have gone so far as to subpoena Judge Hartmere as a witness in our case relative to a hearing in October 2010 when he was the only person to see a purported mortgage note presented by the plaintiff and not entered as evidence. There is no record that she is willing to recuse herself from our case.  In addition, attached hereto please find a Motion To Recuse Judge Bellis which she denied.

**She has refused to rule** on our motion(s) (1). The Practice Book is clear that the burden of proof is on the Plaintiff not the Defendant in proving that the note is the original; **(3) our motion for a jury trial, (4) a subsequent Motion for Dismissal based on new evidence, (5) a Motion for Default against the Plaintiff for Failure To Plead; (6) a Motion To Compel for Failure to Answer our Counterclaims. In almost all of these Motions before Judge Bellis, she has not ruled on any of these matters <u>for years.</u>**

Most of the time, we have been representing ourselves Pro Se. During this lengthy battle we have made numerous discoveries, and have unearthed evidence, that supports our contention and representation that the Plaintiff and their legal counsel, Hunt Leibert & Jacobson of Hartford, the largest "Foreclosure Mill" in the state, has been trying to take title to our home illegally.

2

Recently, the Hartford Law Firm of Halloran-Sage has injected itself into our case without a retainer agreement claiming to     be Plaintiff's counsel in addition to Hunt Leibert & Jacobson. They have continued with their foreclosure action in violation of the Connecticut Practice Book ethics section in their attempt to take our home from us.

The law firm(s) of Hunt Leibert & Jacobson and the successor law firm of Halloran & Sage are both charged with violations of Candor toward the Tribunal whereas (A) A lawyer shall not knowingly,

 (1) Make a false statement of material fact or law to a tribunal.  (2) Fail to disclose a material fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act by the client, (3) Fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or (4) Offer evidence that the lawyer knows to be false. If the lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures." (B) The duties stated in subsection (A) continue to the conclusion of the proceeding, and apply even if compliance requires disclosure of information otherwise protected by Rule 1.6,

(C) A lawyer may refuse to offer evidence that the lawyer reasonably believes is false (D) In an Ex Parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.

**Misleading Legal Argument,** Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent legal authorities. Furthermore, as stated in subsection **(A) (3)**, an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction which has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

**False Evidence,** when evidence that a lawyer knows to be false is provided by a person who is not the client, the lawyer must refuse to offer it regardless of the client's wishes. When false evidence is offered by the client, however, conflict may arise between the lawyer's duty to keep the client's revelations confidential and the duty of candor to the court.

We have been before Judge Bellis and have tried to present evidence, filed numerous motions with exhibits and other relevant facts in our attempt to expose the misconduct of the plaintiff and fraud against the court. She has ignore everything that we have presented as evidence.  Judge Bellis appears to be more concerned about the fact that this is an **"old case"** and not about the charges, evidence or facts that support our case.

3

Time and again she has shown a blatant disinterest in the evidence and has refused to grant our request for a trial even though during a hearing on March 3, 2014 she told us that we were going to have a trial. In the least we should have had an evidentiary hearing where we could enter our proof into the court record.

Instead **she has ruled in favor of the plaintiff in 100% of their motions** and has consistently shown disregard for evidence and case law relative to the national epidemic of foreclosure fraud cases cited. She has stated "I don't care about any cases outside of Connecticut". However, when presented with cases such as those ruled on by the **Hon. Juliet Crawford of Connecticut,** wherein she dismissed numerous foreclosure cases for **"Lack of Standing",  she ignored the facts and case law of these cases.** Furthermore Judge Hartmere has ruled in his own *U.S. Bank vs. Kenneth Coley, CV07 600 14 26 wherein Judge Hartmere ruled in favor of the Defendant, she should have dismissed our case based on the Coley case.* Instead she consistently denies our motions no matter what we try to present to the court. We are being judged by a *"Different Standard".*

**For the record, we have attempted to pay off our mortgage in full twice with Certified Funds, once in 2006 and again in 2008** and the plaintiff refused our funds. Instead they demanded a universal and detailed release, a demand that we found rather extraordinary until we discover that the unsecured Mortgage Note was discharged in a 2004 Chapter 7 Bankruptcy that we filed Pro Se.

The plaintiff deliberately kept that information from us as Pro Se defendants and also from the court while continuing to attempt to collect the debt in violation of the Federal Chapter 7 Permanent Injunction against collecting a **"Discharged Debt". wherein there is no personal liability.**

As the plaintiff has no proof of the Chain of Title and **the Assignment and Affidavit as well as the Notary are known to be fraudulent,** the plaintiff cannot claim that they are proceeding; *In Rem,* "against or about a thing," referring to a lawsuit or other legal action directed toward property, rather than toward a particular person. Thus, if title to property is the issue, the action is "in rem."The term is important since the location of the property determines which court has jurisdiction, and enforcement of a judgment must be upon the property and does not follow a person. "In rem" is different from "in personam," which is directed toward a particular person.

Our claims and charges the following:

1. Fraudulent Assignment
2. Fraudulent Affidavit
3. Fraudulent Notary
4. ROBO Signor
5. Numerous Frauds against the court
6. Chapter 7 violations of the Permanent Injunction against collecting a "a Discharged Debt".

7. **Federal Tax Lien** on our property whereby it is prohibited to grant a Strict Foreclosure and only a Foreclosure by Sale is allow pursuant to "City Savings Bank of Bridgeport Connecticut v Lawlor"

8. After the Chapter 7 Discharge of the Note in 2004, a **Permanent Injunction Against Collection of a Discharged Debt** is in place freezing the debt, fees and late charges at the date of the Discharge. The law firms have continued to unlawfully accrued fees and expenses in violation of federal law bringing a **$84,000** note up to **$311,192.70 illegally.**

9. After (16) years there is **no legal judgment** in this case as judgment was vacated and the case has reverted to pleading status due to a bankruptcy. In effect this has gone on for years at great expense to us with no legal result. I have never signed a note or mortgage but was a 50% equity owner and was granted standing by Judge Stevens. Now I am the 100% owner of our home as my wife transferred her equity to me after her personal liability was discharged in 2004.

10. **Fannie Mae and Freddy Mac both deny ownership of this mortgage**. In the original complaint the plaintiff claimed that our mortgage was part of a trust agreement between the Bank of New York as Trustee for Fannie Mae. Upon inquiry we were informed that Fannie Mae denies ownership. Therefore the question must be asked, what trust is the Bank of New York representing?

11. Thus far no supporting evidence justifying their claims has been provided by plaintiff's counsel with the exception of an unverified note claimed to be the original shown to Judge Hartmere in 2010. During the hearing the note was not shown to us as the defendants **resulting in the subpoenaing of Judge Hartmere as a witness**. We have asked for the note that was presented at that time to be subjected to a forensic examination, however, please do not lose sight of the fact that the note was discharged in 2004 and of no effect. **Additionally, we submitted a formal request to Judge Hartmere to authorize a subpoena requesting a forensic examination of the note claimed by the Plaintiff to be an original and he refused thereby hampering our efforts to obtain the truth.**

10. In the month of August 2011, I contacted the Chief General Counsel for the Bank of New York and was able to send her the facts about our case and she responded via email that she had received and was aware of our case and would respond soon. **As she is knowledgeable of our case we would like her to be subpoenaed and to testify as to what she knows.**

Many if not all of the Pro Se families that have gone before Judge Bellis feel that s**he is not impartial and is biased against Pro Se Defendants,** therefore we asked that the Joint Legislative Committee conduct a hearing on these charges and others to follow. The voters and citizens of this state need a fair and impartial judge with a sense of fairness who will open his or her eyes to the foreclosure fraud abuses of bank plaintiffs and their legal "foreclosure mill" counsel(s).

Our case is the most extreme and well documented proof of her refusal to address the abuses of these law firms and their clients who consistently violate the Ethics section of the Connecticut Practice Book.

As a matter of record we hereby submit evidence in the form of two transcripts for the Committee's review in support of our charges. We have gone so far as to subpoena Judge Hartmere as a witness in our case relative to a hearing in October 2010 when he was the only person to see a purported mortgage note presented by the plaintiff and not entered as evidence.

There is no record that she is willing to recuse herself from our case.

A judge's professional conduct in enforcing the law is covered by Rule2 .2.When applying and interpreting the law, a judge sometimes may make good faith errors of fact or law. Errors of this kind do not violate this Rule. *This is not an error but we are being judged by a "Different Standard".*

See attached court transcripts.

Furthermore the "Note" in this case was discharged by a 2004 Chapter 7 Bankruptcy. A fact known by the plaintiff but not ever disclosed until it was discovered in 2010 by the Defendants. Please note that our Motion For Default For Failure To Plea was filed in *July 23, 2012* and pursuant to the Connecticut Practice Book Sec.17-32 is within the authority of the Foreclosure Clerk to approve as part of his normal duties. As of this date of June 22, 2016 this Motion has been ignored by the Clerk and the Court. *This further supports our charges of a "Civil Conspiracy"*

Rule 1.2. *Promoting Confidence in the Judiciary*. A judge shall act at all times in a manner that promotes public confidence in the independence, integrity and impartiality of the judiciary *and shall avoid impropriety and the appearance of impropriety.* The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, temperament or fitness to serve as a judge.

Canon 2. A Judge Shall Perform the Duties of Judicial Office Impartially, Competently, and Diligently.

Rule 2.3. Bias, Prejudice, and Harassment (a) A judge shall perform the duties of judicial office including administrative duties without bias or prejudice. The attached Transcripts are a basis for the charge that Judge Bellis has directly violated this Rule.

(b) A judge shall not, in the performance of judicial duties by words or conduct, manifest bias or prejudice or engage in harassment including, but not limited to, bias, prejudice or harassment based on race, sex, gender, religion, national origin, ethnicity, disability age, sexual orientation, marital status, social economic status, or political affiliation and shall not condone such conduct by court staff, court officials or others subject to the judge's direction and control.

Rule 2.7. Responsibility to Decide A judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11or other law.

Rule 2.11, Disqualification (a) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned including but not limited to the following circumstances:

(1)The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of facts that are in dispute in the proceeding.

(2) The judge knows the judge's spouse or domestic partner, or a person within the third degree of relationship of either of them or the spouse o r domestic partner of such a person is:

(3) The judge knows that he or she, individually or as a fiduciary or the judge's spouse, domestic partner parent, or child, or any other member of the judge's family residing in the judge's household, has an economic interest n the subject matter in controversy or in a party to the proceeding.

(4) The judge has made a public statement, other than in a court proceeding, judicial decision, or opinion that commits or appears to commit the judge to reach a particular result or rule in a particular way in the proceeding or controversy.

(A) a party to the proceeding or an officer, director, general partner, managing member or trustee of a party;

(5) The judge: (B) acting as a lawyer in the proceeding; (C) a person who has more than a de minimis interest that could be substantially affected by the proceeding or:

(D) "*likely to be a material witness in the proceeding"*.

### Rule 2.15. Responding to Judicial and Lawyer Misconduct

*A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall take appropriate action including informing the appropriate authority.* There is also a federal rule under the Title 18 Criminal Code rule number 4 "Misprison".

(d) *A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action.*

(5) The judge: (A) served as a lawyer in the matter in controversy or was associated with a lawyer who participated substantially as a lawyer in the matter during such association; (B) served in governmental employment and did in such capacity participate and personally and substantially as a lawyer or public official concerning the proceeding or  has publicly expressed in such capacity an opinion concerning the merits of the particular matter in controversy or; (C) **was a material witness concerning the matter**.

(a) A judge shall keep informed about the judge's personal and fiduciary economic Interests and make a reasonable effort to keep informed about the personal economic interests of the judge's spouse or domestic partner and minor children residing in the judge's household.

(b) A judge is subject to disqualification under this Rule, other than for bias or prejudice under subsection(a) (1), may ask the parties and their lawyers to consider outside the presence of the judge and court personnel whether to waive disqualification, provided that the judges shall disclose on the record the basis of such disqualification following the disclosure the parties and lawyers agree, either in writing or on the record before Another judge that the judge should not be disqualified the judge may participate in the proceeding.

(e) A judge is not automatically disqualified from sitting on a proceeding merely because a lawyer or party to the proceeding has filed a lawsuit against the judge or filed a complaint against the judge with the judicial review council when the judge becomes aware that such a lawsuit or complain has been filed against him or her the judge shall on the record disclose that fact to the lawyers and parties to the proceeding before such judge and shall thereafter proceed in accordance with Practice Book Section 1-22 (b).

*Judge Bellis is hereby charged with the following:*

1. *Obstruction of Justice*.

2. *Suppression of Evidence*

3. *Participating in a Civil Conspiracy against the Roman family*.

4. *Violations of the Judicial Cannons:*

5. *Denying Louis Roman a Federally Mandated Mediation program* ex parte at the request of a foreclosure law firm attorney in violation of Connecticut's Chief Administrative Judge the Hon. The Plaintiff is not in compliance, See attached Exhibit.

5. **18 U.S. Code § 242 -** Deprivation of rights under color of law applies to Judges as well as any other person in a position of power.

The Plaintiff in this foreclosure matter has been dilatory in prolonging this case for so long while knowingly continuing this matter so as to ***"torment"*** the Romans when in fact there in no reason to continue as there is no note (it was discharged in a Chapter 7 Bankruptcy in 2004) and without a note there is no reason to have a mortgage, ***see "Franklin Credit Management Corporation v. Thomas J. Nicholas ET AL" (Connecticut** Appellate Court case 22186) September 20, 2002*.

*The Romans are been judged by a different standard* as is evident by the Coley ruling of June 8, 2011 docket number *CV07 600 1426 U.S. Bank vs. Kenneth Coley*.

Based on charges of extensive violations of the Judicial Canons, and the unbelievable and adverse impact that this illegal 16 year old foreclosure has had on my family and me, **I am requesting that the Judiciary Review Committee consider recommending Judge Bellis removal from the Bench, additionally depriving her of any State Pension rights that she may have.**

In 2006, when I first attempted to pay off this mortgage, my family thought that our nightmare was over.  It was just the beginning.  Again, in 2008, I attempted to pay off the Note and Mortgage, both times with Certified Funds in the amount demanded, and it was refused. The Plaintiff was slowly tormenting my family to the point that my daughter had to leave college and be admitted to the hospital for stress related to this crime. They demanded a Universal and General Release from liability as a pre-condition to accepting our funds. We later found out that we had our note discharged in a 2004 Chapter 7, which they knew prohibited the collection of a Discharged Debt.

Judge Barbara Bellis has refused to allow us an Evidentiary Hearing or a Trial and has ignored the relevant facts and evidence that we have repeatedly offered in motions over and over again. Added to this, is the Chief Foreclosure Clerk's deliberate delays in entering our motions in time sensitive matters and his ongoing approval of almost all of the Plaintiff's motion, which leads to **our charges of a Civil Conspiracy**.

Where is the accountability? Who will hold a sitting Connecticut Superior Court Judge and Plaintiff's Counsel accountable?  In 2008, after attending a hearing before Judge Blawie, the Head of the State Police Major Crime Squad thought that the charges were serious enough that it merited a criminal Arrest Warrant against Hunt Leibert & Jacobson attorney Michele Sensale and had it not been for the unfortunate and tragic murder of a Yale University Lab Assistant, the State's Attorney would have requested one. Thereafter the Major Crime Squad had to focus on their primary role and **we were denied justice.**

9

I look forward to assisting you in this matter and am prepared to provide additional information and documents as required by the Connecticut Judicial Review Council.

With best regards,

Louis Roman
631 Fairview Ave.
Bridgeport, CT 06606
Lroman007@optonline.net
Cell: 407-615-0286

Cc: Ken Gosselin, Hartford Courant Newspaper (kgosseline@courant.com)

*Exhibit "B"*

CLERK, SUPERIOR COURT
JUDICIAL DISTRICT OF FAIRFIELD
1061 MAIN STREET
BRIDGEPORT, CT 06604

LOUIS ROMAN
631 FAIRVIEW AVENUE
BRIDGEPORT, CT 06606

Docket Number: **FBT-CV-00-0378565-S**      Notice Issued: **11/29/2016**
Case Caption: **BNY WESTERN TRUST  v. ROMAN DIANE L Et Al**

                    JDNO NOTICE                     Sequence #: **1**

Notice to all counsel and self-represented parties:

Please be advised that pleading #444.00 (Plaintiff's PROPOSED EXECUTION OF
EJECTMENT filed 11/23/2016) has been placed on the arguable civil short
calendar scheduled for Monday, December 19, 2016.

By the Clerk,
Ernest Robear
Deputy Chief Clerk
11/29/2016

# The Right of Redemption

*Exhibit 5 H*

**Find out whether your state allows homeowners to redeem their mortgages and buy back their homes after foreclosure.**

Updated By Michael Price

---

**Facing Foreclosure? We've helped *75* clients find attorneys *today*.**
**Have you received a notice of default from the lender?**

Yes

No

*show all options*        forward >

---

The right of redemption is the right of a homeowner in foreclosure to "redeem" the mortgage and keep the house by paying a certain sum of money within a certain period of time. Depending on the laws of their state, homeowners in foreclosure may have two separate rights of redemption: a pre-foreclosure equitable right of redemption and a post-foreclosure statutory right of redemption.

## The Equitable Right of Redemption

All homeowners, no matter what state they reside in, have the right to redeem their mortgages and save their homes from foreclosure by paying off the entire mortgage balance, plus fees and costs, prior to the foreclosure sale. Although most homeowners in foreclosure will find it difficult to come up with all the cash required to redeem in a lump sum, mortgages may also be redeemed by refinancing the mortgage debt or selling the home to a purchaser.

## The Statutory Right of Redemption

About half of all states have laws that give homeowners the right to redeem their mortgages for a period of time after the foreclosure sale, typically by paying the foreclosure sale price, plus interest and other allowable fees, to the foreclosure sale purchaser. If a home sells at a foreclosure auction for a price far below its fair market value, the homeowner may be able to recoup the equity by redeeming the property for the foreclosure sale price, selling the home to a buyer for the fair market value, and keeping the difference.

## State Laws Regarding the Right of Redemption

Each state has its own law governing a homeowner's right of redemption. Find your state in the list below to find out whether you have the right to redeem your mortgage after the foreclosure sale and what restrictions may apply.

| STATE | MOST COMMON METHOD OF FORECLOSURE | DO BORROWERS HAVE A STATUTORY RIGHT OF REDEMPTION AFTER FORECLOSURE? |
|---|---|---|
| Alabama | Nonjudicial | Yes, within one year after foreclosure sale. Right of redemption extinguished if borrower fails to turn over possession within ten days of buyer's written demand for possession. |
| Alaska | Nonjudicial | Not after nonjudicial foreclosure unless the deed of trust specifically provides a right of redemption. If the lender pursues a judicial foreclosure, there is a 12-month redemption period after the sale is confirmed |

029122                    BK 4028 PG 052



*Exhibit "D"*



## ASSIGNMENT OF MORTGAGE

KNOW BY ALL THESE MEN PRESENTS, THAT **NORTHEAST MORTGAGE CORPORATION, LLC.**, a Connecticut lending Corporation having its principal office at 800 Main Street South, Suite 225, Southbury, CT 06488 , ASSIGNOR, in consideration of One Dollar ($1.00) and other valuable considerations paid by

INMC Mortgage Holdings Inc., 155 North Lake Road, Pasadena, CA 91101, ASSIGNEE, does hereby grant, bargain, sell and assigns without recourse, a certain Note and Mortgage securing said Note from **DIANE L. ROMAN** to the said assignor in the principal amount of **EIGHTY FOUR THOUSAND AND 00/100 DOLLARS ($84,000.00)** dated **NOVEMBER 24, 1998** and recorded _____ in Volume _____ at Page _____ of the **BRIDGEPORT** Land Records covering premises known as **631 FAIRVIEW AVENUE, BRIDGEPORT, CT 06606** more particularly described in said Mortgage.

In WITNESS WHEREOF, the said Assignor has duly executed this assignment on **NOVEMBER 24TH**.

WITNESSED BY:

_____
**DEBRA HASSAN**

_____
**JOHN FISHER**

_____ L.S.
**ANTHONY J. GABRIELE, JR.**
**VICE-PRESIDENT**
**NORTHEAST MORTGAGE CORP., LLC.**

STATE OF CONNECTICUT)
COUNTY OF NEW HAVEN)          SS. SOUTHBURY

The forgoing instrument was acknowledged before me this the **24TH** day of **NOVEMBER** , **1998** , by ANTHONY J. GABRIELE, JR., VICE-PRESIDENT of NORTHEAST MORTGAGE CORP., LLC., A LIMITED LIABILITY COMPANY, on behalf of said corporation.

In witness whereof I hereunto set my hand.

_____

BRIDGEPORT, CONN.
LAND RECORDS
REC'D FOR RECORD FILING
ON 12-1-98 , AT 10:21AM
ATTEST: _____
HECTOR DIAZ, TOWN CLERK

*Tammi Emig*
*Notary Public*
*My Commission Expires 09/30/03*

027239   ○   BK4235PG186   ○

[WHEN RECORDED RETURN TO]
NTC  ATTEN:DARRELL COLON
101 N. BRAND BLVD., SUITE #1600
GLENDALE, CALIFORNIA   91203
THE BANK OF NEW 414241

## ASSIGNMENT OF MORTGAGE

414241/99C

KNOW BY ALL THESE MEN PRESENTS, THAT NORTHEAST MORTGAGE CORPORATION, LLC., a Connecticut lending Corporation having its principal office at 800 Main Street South, Suite 225, Southbury, CT 06488 , ASSIGNOR, in consideration of One Dollar ($1.00) and other valuable considerations paid by

, ASSIGNEE, does hereby grant, bargain, sell and assigns without recourse, a certain Note and Mortgage securing said Note from **DIANE L. ROMAN** to the said assignee in the principal amount of **EIGHTY-FOUR THOUSAND AND 00/100 DOLLARS ($84,000.00)** dated **NOVEMBER 24, 1998** and recorded _____ in Volume **4028** at Page **54** of the **BRIDGEPORT** Land Records covering premises known as **631 FAIRFIEW AVENUE, BRIDGEPORT, CT 06606** more particularly described in said Mortgage.

In WITNESS WHEREOF, the said Assignor has duly executed this assignment on **NOVEMBER 25, 1998**.

WITNESSED BY:

_____
**KEVIN A. KELLER**

_____
**JOHN FISHER**

STATE OF CONNECTICUT)
COUNTY OF NEW HAVEN)

                                    _____ L.S.
                                    **ANTHONY J. GABRIELE, JR**
                                    **VICE PRESIDENT**
                                    **NORTHEAST MORTGAGE CORP., LLC.**

                                    The Bank of New York
                                    Trustee under the Pooling
                                    and Servicing Agreement Series
                                    1997 ___ at 101 Barclay Street
                                    New York, NY 10286
                                    Corp. Trust - MBS

SS. SOUTHBURY

The forgoing instrument was acknowledged before me this the **25TH** day of **NOVEMBER , 1998** , by ANTHONY J. GABRIELE, JR., VICE PRESIDENT of NORTHEAST MORTGAGE CORP., LLC., A LIMITED LIABILITY COMPANY, on behalf of said limited liability company.

In witness whereof I hereunto set my hand.

_____

Yanne Emy

Tmmal Emly
Notary Public
My Commission Expires 09/30/03

026998          BK 4 7 1 3 PG 2 8 3

## ASSIGNMENT OF MORTGAGE

POOL NUMBER _____          LOAN NUMBER ████ 3957

KNOW YE THAT INMC MORTGAGE HOLDINGS, INC., ("Assignor"), a banking institution duly organized under and pursuant to the laws of the State of _CA_ , for the consideration of One Dollar and other valuable considerations, received to its full satisfaction of INMC MORTGAGE HOLDINGS, INC., does hereby assign to NORTHEAST MORTGAGE CORPORATION, LLC., having an address of 800 Main Street South, Suite 225, Southbury, CT 06488, its successors, and assigns forever, all the right, title, interest, claim, and demand whatsoever as the said Assignor has or ought to have in or to a certain mortgage from Diane L. Roman to Northeast Mortgage Corporation, LLC dated November 24, 1998 and recorded on December 1, 1998 in Volume 4028 at Page 44 of the Bridgeport Land Records, which mortgage was assigned to INMC MORTGAGE HOLDINGS, INC. by Assignment of Mortgage dated November 24, 1998 and recorded December 1, 1998 in Volume 4028 at Page 52 of the Bridgeport Land Records in or to the property described in said mortgage deed situated in the Town of Bridgeport, County of Fairfield and State of Connecticut, and the promissory note for Eight Four Thousand and 00/00 ($84,000.00) Dollars, described in said mortgage deed and secured thereby, without warranty or representation by, or recourse to, said Assignor.

TO HAVE AND TO HOLD the premises, with all the appurtenances, unto the said Assignee its successors and assigns forever, so that neither the Assignor nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the premises, or any part thereof; but therefrom it is and they are by these presents forever barred and secluded.

IN WITNESS WHEREOF, on the _24_ day of _Sept._ , 2001, said corporation has caused this deed to be executed and delivered, and its corporate seal to be hereto affixed in its behalf by _Rosa Salgado_ , who is duly authorized and empowered.

Signed, sealed and delivered          INMC MORTGAGE HOLDINGS,
                                       INC.
in the presence of:

_____

By _____

_____          Its   Rosa Salgado, Assistant Vice President

STATE OF _CA_    )
                 ) SS.
COUNTY OF   _Los Angeles_ )

BK 4713 PG 284

On this _24_ day of _Sept._, 2001, before me personally came _Rosa Salgado_ to me known, who being by me duly sworn, did depose and say that he/she is a _Assistant Vice President_ of INMC MORTGAGE HOLDINGS, INC. the corporation described in and which executed the above instrument; that he/she knows the seal of said corporation: that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by means of electronic process by like order acknowledged.

NOTARY PUBLIC

MY COMMISSION EXPIRES: _1. 14. 05_

PROPERTY:
631 Fairview Avenue
Bridgeport, CT
PNC/Roman #0093891292

ERIKA HERRERA
Commission # 1290845
Notary Public - California
Los Angeles County
My Comm. Expires Jan 14, 2005

BRIDGEPORT, CONN.
LAND RECORDS
REC'D FOR RECORD FILING
ON _10-5-07_ AT _1:56 PM_
ATTEST: _____
HECTOR DIAZ, TOWN CLERK





# CONNECTICUT DEPARTMENT OF BANKING

Home    About Us    Programs & Services    Forms    Contact Us

Governor Dannel P. Malloy    Search


**Verify a License**


**Find a Bank**


**Find a Credit Union**

**Legal Resources**

**Enforcement**

**Newsroom**

**Alerts**


**Employment Opportunities**

**Helpful Links**







WHEREAS, the Banking Commissioner ("Commissioner") is charged with the administration of Part I of Chapter 668, Sections 36a-485 to 36a-534c, inclusive, of the Connecticut General Statutes, "Mortgage Lenders, Correspondent Lenders, Brokers and Loan Originators", and Sections 9 and 19 to 21, inclusive, of Public Act 09-209;

WHEREAS, Northeast Mortgage is a Nevada corporation that was licensed as a mortgage correspondent lender in Connecticut under Part I of Chapter 668, Sections 36a-485 et seq. of the Connecticut General Statutes;

WHEREAS, on January 7, 2009, the Commissioner, through the Consumer Credit Division of the Department of Banking, conducted an examination pursuant to Section 36a-17 of the Connecticut General Statutes into the activities of Northeast Mortgage to determine if it had violated, was violating or was about to violate the provisions of the Connecticut General Statutes within the jurisdiction of the Commissioner;

WHEREAS, as a result of such examination, the Commissioner alleges that Northeast Mortgage employed or retained, during the period of March 2007 through November 2008, eight (8) individuals as originators or mortgage loan originators without registering or licensing them, in violation of Sections 36a-486(b) and 36a-511(b) of the then applicable Connecticut General Statutes;

WHEREAS, as a result of such examination, the Commissioner also alleges that Northeast Mortgage paid, during the period October 2007 through February 2009, referral fees to credit unions for five (5) loans and failed to properly document such fees on the HUD-1 Settlement Statements, in violation of 24 CFR 3500.8(b), 24 CFR 3500.14(c) and 24 CFR 3500.14(g)(III), which are regulations applicable to Northeast Mortgage's business;

WHEREAS, the Commissioner believes that such allegations would support initiation of enforcement proceedings against Northeast Mortgage, including proceedings to revoke Northeast Mortgage's license pursuant to Section 36a-494(a) of the Connecticut General Statutes, as amended by Public Act 09-209, and subsections (a) and (b) of Section 36a-51 of the Connecticut General Statutes, issue a cease and desist order against Northeast Mortgage pursuant to Section 36a-494(b) of the Connecticut General Statutes, as amended by Public Act 09-209, and Section 36a-52(a) of the Connecticut General Statutes, and impose a civil penalty of up to one hundred thousand dollars ($100,000) per violation on Northeast Mortgage pursuant to Section 36a-494(b) of the Connecticut General Statutes, as amended, and Section 36a-50(a) of the Connecticut General Statutes;

WHEREAS, Section 4-177(c) of the Connecticut General Statutes and Section 36a-1-55(a) of the Regulations of Connecticut State Agencies provide that a contested case may be resolved by agreed settlement, unless precluded by law;

WHEREAS, both the Commissioner and Northeast Mortgage acknowledge the possible consequences of formal administrative proceedings;

WHEREAS, Northeast Mortgage agrees to voluntarily enter into this Settlement Agreement without admitting or denying that any allegations set forth herein, and solely for the purposes of obviating the need for formal administrative proceedings concerning the allegations described above;

WHEREAS, on October 6, 2009, Northeast Mortgage surrendered its mortgage correspondent lender license in Connecticut;

AND WHEREAS, Northeast Mortgage, through its execution of this Settlement Agreement, voluntarily agrees to waive any rights to a hearing upon the allegations contained in this Settlement Agreement, and waives the right to seek judicial review or otherwise challenge or contest the validity of this Settlement Agreement.

**NOW THEREFORE,** the Commissioner and Northeast Mortgage enter into this Settlement Agreement as follows:

1. No later than the date this Settlement Agreement is executed by Northeast Mortgage, Northeast Mortgage shall remit to the Department of Banking, by cashier's or certified check or money order made payable to "Treasurer, State of Connecticut", the sum of Twenty-Five Thousand Dollars ($25,000) as a civil penalty;

2. Upon entry of this Settlement Agreement, this matter will be resolved and the Commissioner will not take any future enforcement action against Northeast Mortgage based upon the allegations contained herein; provided that entry of this Settlement Agreement is without prejudice to the right of the Commissioner to take enforcement action against Northeast Mortgage based on the allegations contained herein if any representations made by Northeast Mortgage in this Settlement Agreement are subsequently discovered to be untrue or if Northeast Mortgage is not fully complying with any term or condition stated herein;

3. Nothing in the entry of this Settlement Agreement shall adversely affect the ability of Northeast Mortgage to apply for or obtain licenses or renewal licenses under Part I of Chapter 668, Sections 36a-485 et seq., of the Connecticut General Statutes, and to apply for or obtain licensure of its mortgage loan originators from the Commissioner;

4. Notwithstanding paragraph 2 herein, execution of this Settlement Agreement is without prejudice to the right of the Commissioner to take enforcement action against Northeast Mortgage to enforce this Settlement Agreement if the Commissioner determines that Northeast Mortgage is not fully complying with any term or condition stated herein. For purposes of this paragraph, a violation of this Settlement Agreement shall be deemed to be a violation of an order of the Commissioner.

**IN WITNESS WHEREOF,** the parties hereto have caused this Settlement Agreement to be executed by each of them or their duly authorized representatives on the dates hereinafter subscribed.

Dated at Hartford, Connecticut
this 20th day of November 2009.

_____/s/_____
Howard F. Pitkin
Banking Commissioner

I, Brian P. Rogerson, state on behalf of Northeast Mortgage Corporation, that I have read the foregoing Settlement Agreement; that I know and fully understand its contents; that I am authorized to execute this Settlement Agreement on behalf of Northeast Mortgage Corporation; that Northeast Mortgage Corporation agrees freely and without threat or coercion of any kind to comply with the terms and conditions stated herein; and that Northeast Mortgage Corporation voluntarily agrees to enter into this Settlement Agreement, expressly waiving any right to a hearing on the matters described herein.

By: _____/s/_____
Name: Brian P. Rogerson
Title: President
Northeast Mortgage Corporation

State of: Arizona

County of: Maricopa

On this the 16 day of November 2009, before me, Cheryl L. Turk, the undersigned officer, personally appeared Brian P. Rogerson who acknowledged himself to be the President of Northeast Mortgage Corporation, a corporation that he, as such President, being authorized so to do, executed the foregoing instrument for the purposes therein contained, by signing the name of the limited liability company by himself as President.

In witness whereof I hereunto set my hand.

_____/s/_____
Notary Public
Date Commission Expires: 8-5-2011

Administrative Orders and Settlements

Printable Version

FORM B10 (Official Form 10) (9/97)

"FOR CHAPTER 13 ONLY: FILE IN DUPLICATE WITH CLERK, IN TRIPLICATE FOR DATE-STAMPED COPY, SEE #9 BELOW

### United States Bankruptcy Court
### Bridgeport District of Connecticut

| | |
|---|---|
| □ CH 7   ■ Ch 13   □ Ch 11 | |

**PLEASE CHECK CHAPTER**

| | |
|---|---|
| Name of Debtor | Case Number |
| **DIANE L ROMAN** | **02-51089** |

**PROOF OF CLAIM**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or entity to whom the debtor owes money or property)<br>**Washington Mutual Bank, (n)** | □ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and Address Where Notices Should be Sent<br>**Washington Mutual Bank, (n)**<br>**9451 Corbin Avenue, N010204**<br>**Northridge, CA  91324** | □ Check box if you have never received any notices from the bankruptcy court in this case. |
| | □ Check box if the address differs from the address on the envelope sent to you by the court. |
| Telephone No. (818) 775-2880 | |

| | |
|---|---|
| Account or other number by which creditor identified debtor:<br>**9918912929** | Check here if this claim:<br>□ replaces   □ amends   a previously filed claim, dated: |

**1. BASIS FOR CLAIM**

| | |
|---|---|
| □ Goods sold<br>■ Money Loaned<br>□ Taxes | □ Services performed<br>□ Personal injury/wrongful death<br>□ Other (Describe briefly) |

□ Retiree benefits as defined in 11 U.S.C. § 1114(a)

□ Wages, salaries, and compensation (Fill out below)
Your social security number _____
Unpaid compensation for services performed
from _____ to _____
(date)      (date)

**2. DATE DEBT WAS INCURRED:** 11/24/1998

**3. IF COURT JUDGMENT, DATE OBTAINED:**

**4. Total Amount of Claim at Time Case Filed:**   **$112,986.44**

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
□ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| **5. Secured claim** | **6. Unsecured Priority Claim** |
|---|---|
| ■ Check this box if your claim is secured by collateral (including a right of setoff). | □ Check this box if you have an unsecured priority claim.<br>Amount entitled to priority $ _____ |
| Brief Description of Collateral: | Specify the priority of the claim. |
| ■ Real Estate<br>□ Motor Vehicle<br>□ Other (Describe Briefly) | □ Wages, salaries, or commissions (up to $4000), *earned within 90 days before filing of the bankruptcy petition or cessation of the business, whichever is earlier) - 11 U.S.C. § 507(a)(3) |
| Value of collateral: _____ | □ Contributions to an employee benefit plan - U.S.C. § 507(a)(4) |
| | □ Up to $1,800* of deposits toward purchase, lease, or rental of services for personal, family, or household use - 11 U.S.C. § 507(a)(6)<br>11 U.S.C. § 507(a)(6) |
| Amount of arrearage and other charges at time case filed included | □ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7) |
| in secured claim above, if any: **$33,094.07** | □ Taxes or penalties of governmental units - 11 U.S.C. § 507(a)(8)<br>□ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)<br>* Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

**7. CREDITS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**THIS SPACE IS FOR COURT USE ONLY**

**8. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary. ANY ATTACHMENT MUST BE 8-1/2" BY 11"

**9. DATE-STAMPED COPY:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and an additional copy of this proof of claim.

This is a true and correct copy of the original which is on file at the Office of the Clerk.

[signature] Clerk, U.S. Bankruptcy Court

| | |
|---|---|
| Date<br>**10/21/2002** | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>[signature] _____<br>**E.HOOK-HOSS, CODILIS ET. AL   AS COUNSEL FOR WASHINGTON MUTUAL BANK** |

---

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

026998                          BK4713PG283

## ASSIGNMENT OF MORTGAGE

POOL NUMBER _____          LOAN NUMBER ███ 3957

KNOW YE THAT INMC MORTGAGE HOLDINGS, INC., ("Assignor"), a banking institution duly organized under and pursuant to the laws of the State of _CA_, for the consideration of One Dollar and other valuable considerations, received to its full satisfaction of INMC MORTGAGE HOLDINGS, INC., does hereby assign to NORTHEAST MORTGAGE CORPORATION, LLC., having an address of 800 Main Street South, Suite 225, Southbury, CT 06488, its successors, and assigns forever, all the right, title, interest, claim, and demand whatsoever as the said Assignor has or ought to have in or to a certain mortgage from Diane L. Roman to Northeast Mortgage Corporation, LLC dated November 24, 1998 and recorded on December 1, 1998 in Volume 4028 at Page 44 of the Bridgeport Land Records, which mortgage was assigned to INMC MORTGAGE HOLDINGS, INC. by Assignment of Mortgage dated November 24, 1998 and recorded December 1, 1998 in Volume 4028 at Page 52 of the Bridgeport Land Records in or to the property described in said mortgage deed situated in the Town of Bridgeport, County of Fairfield and State of Connecticut, and the promissory note for Eight Four Thousand and 00/00 ($84,000.00) Dollars, described in said mortgage deed and secured thereby, without warranty or representation by, or recourse to, said Assignor.

TO HAVE AND TO HOLD the premises, with all the appurtenances, unto the said Assignee its successors and assigns forever, so that neither the Assignor nor its successors, nor any other person under it or them shall hereafter have any claim, right or title in or to the premises, or any part thereof; but therefrom it is and they are by these presents forever barred and secluded.

IN WITNESS WHEREOF, on the _24_ day of _Sept_, 2001, said corporation has caused this deed to be executed and delivered, and its corporate seal to be hereto affixed in its behalf by _Rosa Salgado_, who is duly authorized and empowered.

Signed, sealed and delivered                INMC MORTGAGE HOLDINGS,
                                            INC.
in the presence of:

_____                   By _____

_____                   Its  Rosa Salgado, Assistant Vice President


STATE OF _CA_    )
                 ) SS.
COUNTY OF        ) _Los Angeles_

BK 4713 PG 284

On this _24_ day of _Sept_ , 2001, before me personally came _Rosa Salgado_ to me known, who being by me duly sworn, did depose and say that he/she is a _Assistant Vice President_ of INMC MORTGAGE HOLDINGS, INC. the corporation described in and which executed the above instrument; that he/she knows the seal of said corporation: that the seal affixed to said instrument is such corporate seal, that it was so affixed by order of the Board of Directors of said corporation, and that he/she signed his/her name thereto by means of electronic process by like order acknowledged.

NOTARY PUBLIC
MY COMMISSION EXPIRES: _1. 14. 05_

**PROPERTY:**
631 Fairview Avenue
Bridgeport, CT
PNC/Roman #0093891292

ERIKA HERRERA
Commission # 1290845
Notary Public - California
Los Angeles County
My Comm. Expires Jan 14, 2005

BRIDGEPORT, CONN.
LAND RECORDS
REC'D FOR RECORD FILING
ON _10-5-01_ AT _1:56 Pm_
ATTEST:
HECTOR DIAZ, TOWN CLERK

Form 18 (Official Form 18)(9/97)

CASE 15-50654
Exhibit "D"

# United States Bankruptcy Court

### District of Connecticut
### Case No. 04-50749
### Chapter 7

In re: (Name of Debtor)(s)
  Diane L. Roman
  631 Fairview Avenue
  Bridgeport, CT 06606

Social Security No.:
  xxx-xx-1677

Employer's Tax I.D. No.:

Deputy Clerk, U.S. Bankruptcy Court

12-9-7
Date

# DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED** :

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 9/20/04

Deborah S. Hunt, Clerk of Court
United States Bankruptcy Court

## SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

Case 16-51310 Doc 7  Filed 11/15/16   Entered 11/16/16 11:21:46
Document      Page 26 of 26

Form 18 (Official Form 18)(9/97)

CASE 15-5065?
Exhibit "D"

# United States Bankruptcy Court

### District of Connecticut
### Case No. 04–50749
### Chapter 7

In re: (Name of Debtor)(s)
Diane L. Roman
631 Fairview Avenue
Bridgeport, CT 06606

Social Security No.:
xxx–xx–1677

Employer's Tax I.D. No.:

*[seal]*

*a true copy of ... is on file at the Office of the Clerk*

_____
Deputy Clerk, U.S. Bankruptcy Court      12-9-13
                                          Date

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED** :

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 9/20/04

*Deborah S. Hunt*

Deborah S. Hunt, Clerk of Court
United States Bankruptcy Court

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

Form 18 (Official Form 18)(9/97)

## United States Bankruptcy Court

### District of Connecticut

Case No. 04–50749

Chapter 7

In re: (Name of Debtor)(s)
Diane L. Roman
631 Fairview Avenue
Bridgeport, CT 06606

Social Security No.:
xxx–xx–1677

Employer's Tax I.D. No.:

---

## DISCHARGE OF DEBTOR

It appearing that the debtor is entitled to a discharge,

**IT IS ORDERED** :

The debtor is granted a discharge under section 727 of title 11, United States Code, (the Bankruptcy Code).

BY THE COURT

Dated: 9/20/04

*Deborah S. Hunt*

Deborah S. Hunt, Clerk of Court
United States Bankruptcy Court

### SEE THE BACK OF THIS ORDER FOR IMPORTANT INFORMATION.

*Exhibit "E"*

# Live by the LAW.COM ⬧ALM



## Connecticut Law Tribune
An ALM Website

**ALM Properties, Inc.**
Page printed from: *Connecticut Law Tribune*

Back to Article

# Lengthy Foreclosure Fight Moves Forward — Slowly

THOMAS B. SCHEFFEY

The Connecticut Law Tribune

02-11-2013

Some of the lawyers who have followed Bridgeport businessman Louis Roman's 13-year foreclosure battle respect him for being "smart, diligent and genuine."

"He's done a really good job, and he's not even a lawyer," says Lamya Forghany, a foreclosure lawyer who represented Roman in 2010 and 2011. She stopped when it became too costly for both of them, she says. "He comes up with all these theories and all these briefs and motions," said Forghany. "Unfortunately, people aren't taking him too seriously. I think he's a good role model for people facing the same situation in this economy."

That's not what Roman's adversaries want to hear, as what's believed to be the state's oldest pending foreclosure case plods forward. Though Roman now says he's willing to pay his debt, he claims he won't do so until its clear who holds the mortgage note. He planned to return to court this week (Feb. 11) to make more arguments.

Among his adversaries is Richard Liebert, a name partner in the promient Connecticut foreclosure firm of Hunt, Liebert, Chester & Jacobson. The firm is handling the case for J.P. Morgan Chase, which is currently servicing the mortgage now held by Bank of New York. Liebert declined to speak directly about the case with the Law Tribune, and directed questions to J.P. Morgan.

A company spokeswoman declined comment, citing "borrower privacy." Instead, she cited J.P. Morgan court pleadings that express frustration and amazement that Roman's ex-wife has been able to live in the modest 1,400-square-foot gray-blue cape on Fairview Avenue in Bridgeport without making a single mortgage payment in over a decade. Hunt Liebert attorneys, in motions, describe Roman's legal efforts to stave off foreclosure as a form of "harassment."

Another adversary is Superior Court Judge Michael Hartmere, who handled the foreclosure case for a number of years. Roman says he tried without success to persuade Hartmere to approve a jury trial that, said Roman, would get to the bottom of the issue of whether the financial institutions that are seeking foreclosure have legal grounds to do so.

He even attempted to bring Hartmere into the case as a witness, on grounds that the mortgage note supporting the foreclosure was never placed into evidence, and was viewed only by the judge. The Judicial Branch's lawyers got Roman's motion to subpoena Hartmere quashed.

Last winter, Roman testified in opposition to Hartmere's reappointment as a judge. Roman praised Hartmere's character, but said he was biased in favor of financial institutions in foreclosure cases. Roman also filed a complaint

with the Judicial Review Council that Hartmere is "not impartial and [is} biased against pro se defendants." That complaint was dismissed and Hartmere was reappointed.

Subsequently, Hartmere removed himself from Bank of New York v. Diane L. Roman et al.

Roman has more financial experience than most pro se litigants. He says he was previously a commercial lending banker, a vice president at CityTrust Bank, which was later acquired by J.P. Morgan Chase. He currently describes himself as an "international banker" for Glacier International Depository Bank, an offshore institution connected with a Nevada Indian tribe.

Although he and his wife are divorced, Roman says they remain close. His wife, Diane, and daughter live in the Fairview Avenue house. "They're family, and I'd do anything for them. My ex-wife remains my best friend," he said.

The couple began falling behind on mortgage payments in 1999 and the first foreclosure action was in 2000. In 2004, before their divorce, the Romans filed for bankruptcy. Louis Roman contends that the personal obligation to pay the note was discharged in that Chapter 7 proceeding. But Hunt Liebert and Bank of New York say that's not the case, and they have continued to pursue the foreclosure action.

In 2004, the value of the Bridgeport property was $162,000 and the Romans' debt was about $120,000. In the previous year, according to court documents, the Romans had paid only $604.92 in interest and $55.91 in principal from the borrowers.

Roman contends that in 2006 and again in 2008 he tendered full payment of the balance due on the mortgage but was told that payment would not be accepted without a full release of any claims against Bank of New York. That requirement, said Roman, "made bells go off." His legal counsel at the time were also wary, he says. "Why wouldn't they just take the money?" Roman asks.

Roman's lawyer in 2008, Richard A. Scheiman of Trumbull, recalls it this way; "At one point, Mr. Roman gave me a check from a credit [union] to pay off the debt. I told him the rules of the court were that I needed a bank or cashier's check. He took the check back and never returned with a bank check. I have no idea why he did not come back."

In 2008, Roman used an unusual transaction in an attempt to turn back the financial institutions. Roman asked a Stratford investor named Ralph Flamini to bid on the mortgage for the Bridgeport home when it was up for a foreclosure sale. Roman contends that he then had Flamini transfer the mortgage rights to Roman's employer — Glacier International Depository Bank (GID).

Days later, a Hunt Liebert attorney filed a motion requesting permission from Superior Court Judge John Blawie to purchase the mortgage from Flamini. If successful, the attorneys would have reclaimed the house for their client, and the foreclosure case would have been over.

But Roman says the attorneys knew that Flamini no longer held the rights and that this was nothing more than an attempt to improperly sway the judge.

At that point, GID was represented by Fairfield lawyer Anthony J. Musto, now a state senator. In a 2010 affidavit, Musto largely backs Roman's version of the events. Musto said he contacted attorney Elena Cahill, who is both Flamini's lawyer and sister. Musto asked Cahill whether her brother had sold the rights to anyone other than GID. Cahill stated that she had spoken to her brother, and that he understood he had sold the rights to GID, and "could not sell them again, and that he did not wish to be contacted further."

From this, Roman concludes that the bank had no paperwork to support its attempt at foreclosure, and so was forced into attempting an alternative approach.

As in the 2010 robo-signing scandal, foreclosure defendants like the Romans are focused on the paper documentation that support mortgage obligations. Not surprisingly, forclosure professionals, like Hunt Liebert, favor less specific documentation, in the interest of efficient forclosure processing.

Musto would like to bring more accountability into the mortgage recording process. For the second straight year, he has proposed a bill tht would "require foreclosing banks to assign the mortgage on the public land records as opposed to just possessing the note."

Banks, Musto said, too often move forward with foreclosures without having all the necessary paperwork. "This [bill] would slow down the process and also place banks on the same playing field with everyone else who has to record their interests on the land records — purchasers, lien holders, income tax authorities, etc."

As for Roman, he has no plans to back down. On Feb. 1, he wrote a letter to the chief foreclosure clerk in Bridgeport Superior Court asking permission to argue three motions on Feb. 11.

He wrote that he planned to argue that the case should be dismissed for lack of jurisdiction. He's also seeking return of the $22,000 bid bond which was paid into court in 2008, when he secured certain rights to his mortgage.

"This case has been costly to my family —physically, financially and emotionally," Roman said last week. "We have always been willing to pay, but to whom? There is no paper trail, and the plaintiffs, seeking foreclosure have refused to provide the proof validating their position. That's what it's all about."•



Copyright 2013. ALM Media Properties, LLC. All rights reserved.